UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00041-GNS

SIERRA N. SKIPPER, Individually
and as Administratix of the Estate of
Margaret Leah Skipper, by and through
Estate of Margaret Leah Skipper; and
S.R.S.                                                                                           PLAINTIFFS


v.


THOMAS CLARK, Individually
and in his Official Capacity as
former Casey County Coroner                                                        DEFENDANT


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss filed by Defendant Thomas

Clark ("Clark") (DN 9) as well as the Motion to Amend/Correct the Complaint filed by Plaintiffs

(DN 13). The motions have been fully briefed by the parties and are ripe for decision. For the

reasons outlined below, Plaintiffs' Motion to Amend/Correct the Complaint is **DENIED** as

futile, and Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

The remaining state law claims are **REMANDED** to Casey Circuit Court.

## I.        SUMMARY OF FACTS AND CLAIMS

This action arises out of the events following the death of Margaret Leah Skipper

("Decedent") in Casey County, Kentucky, on March 18, 2014.  (Pls.' Resp. to Def.'s Mot. to

Dismiss 1, DN 12).  Casey County Deputy Sheriff Freeman Luttrell ("Luttrell") responded to a

call from Michael Johnson, with whom Decedent resided, that there had been a domestic dispute.

(Pls.' Resp. to Def.'s Mot. to Dismiss 1, DN 12).   Upon arrival, Luttrell and EMTs found

1

Decedent unresponsive with a single gunshot wound to the right side of her head.  (Pls.' Resp. to Def.'s Mot. to Dismiss 1, DN 12).

Clark, in his official capacity as Casey County Coroner, was called to the scene in order to perform an investigation of Decedent's death.  (Def.'s Mot. to Dismiss 1-2, DN 9).  Clark concluded in his "Coroner Investigation Report" that Decedent's death was caused by a self-inflicted "contact gunshot wound to the right side of the head."  (Pls.' Resp. to Def.'s Mot. to Dismiss 2, DN 12).  Decedent's daughters, Plaintiffs Sierra N. Skipper and S.R.S., requested an autopsy and further examination be conducted, but Clark allegedly did not pursue any further investigation.  (Pls.' Resp. to Def.'s Mot. to Dismiss 2).

On March 18, 2015, Plaintiffs filed this action in Casey Circuit Court alleging that Clark failed to conduct a post-mortem examination in compliance with KRS 72.025, *et seq.*, which requires that a post-mortem examination be conducted by a certified coroner when the circumstances surrounding a death appear to be caused by homicide, violence, or suicide. (Compl. ¶¶ 7-25, DN 1-1).  Specifically, the Complaint alleged that Clark had failed to comply with training requirements enumerated in KRS 72.415 and that his failure to follow the statutory protocol for post-mortem examinations violated Decedent's due process and equal protection rights under the Fourteenth Amendment.  Furthermore, Plaintiffs alleged that Clark's conduct was actionable as negligence *per se* under KRS 446.070.  (Compl. ¶¶ 27-29).  Finally, the Complaint asserts that "the conduct of the defendant, Coroner Clark, was so beyond the bounds of professionalism, morality, and decency that it [rose] to the level of outrageous conduct" for which Plaintiffs are entitled to recover for intentional infliction of emotional distress ("IIED"). (Compl. ¶¶ 30-31).

After being served, Clark moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).   Subsequently, Plaintiffs sought leave pursuant to Federal Rule of Civil Procedure 15 to amend and correct the Complaint in order to avoid dismissal by asserting all 42 U.S.C. § 1983 claims on behalf of all plaintiffs "rather than limiting said claims to the Estate of Margaret Leah Skipper," by adding a substantive due process claim, by adding "language concerning [plaintiffs'] claim under KRS 446.070 which would encompass negligent conduct as well as intentional conduct pending further discovery in this matter," and by resolving a typographical error.  (Pls.' Mem. in Supp. of Mot. to Amend/Correct Compl. 2, DN 13).

## II.   <u>STANDARD OF REVIEW</u>

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accepting "as true all factual allegations and permissible inferences therein.  *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)).   The nonmoving party, however, must plead more than bare legal conclusions. *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).   In order to survive a 12(b)(6) motion, "[the] complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   While the pleadings do not need to contain detailed factual allegations, the nonmoving party must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

3

# III.   DISCUSSION

## A.   Defendant's Motion to Dismiss

In the Complaint, Plaintiffs assert claims against Clark in both his official and individual capacities.  Both types of claims are addressed separately below.

### 1.   *Official-Capacity Claims*

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Thus, Plaintiffs' official-capacity claims against Clark are actually claims against Casey County.  *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) ("[Plaintiff] Lambert sued the Clerk in his official capacity, which is the equivalent of suing the Clerk's employer, the County.").  Furthermore, "[t]he law is clear that liability of supervisory personnel must be based on more than merely the right to control employees."  *Hays v. Jefferson Cty.*, 668 F.2d 869, 872 (6th Cir. 1982).  Instead, Section 1983 claims against a municipality require the Court to analyze "(1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation."  *Smith v. Osbourne*, No. 4:10-CV-P22-M, 2010 WL 1337017, at *1 (W.D. Ky. Mar. 30, 2010) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).

A county cannot be held responsible for a constitutional deprivation unless there is a direct causal link between its policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691.  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the [county] from acts of employees of the [county], and thereby make clear that [county] liability is limited to action for which the [county] is actually responsible.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1998) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80

(1986)) (emphasis on original).  A plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).  Moreover, in order to establish the liability of a government body under § 1983 the policy or custom must be "the moving force of the constitutional violation."  *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiffs have failed to allege that Defendant Clark acted pursuant to a county policy or custom by failing to conduct further investigation into Decedent's death.  While Plaintiffs contend that further discovery will elicit material facts, the pleading standards of Rule 8 are not intended to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.  In the instant case, the Complaint in no way demonstrates that Clark's conduct was a result of a policy or custom of Casey County.  Because the Complaint fails to establish a basis of liability against Casey County and it fails to state a cognizable claim under 42 U.S.C. § 1983, the official-capacity claim against Clark will be dismissed.

Plaintiffs' state law claims brought against Clark in his official capacity as county coroner must also fail.  Kentucky has adopted the *Graham* court's analysis that official capacity suits are the functional equivalent of claims against the county, and it is well established that the county is entitled to sovereign immunity as to state law claims.  *See Flick v. Estate of Wittich*, 396 S.W.3d 816, 820 (Ky. 2013); *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001).  Thus, Plaintiffs' claims against Defendant Clark in his official capacity under KRS 446.070 and IIED must be dismissed.

## 2.     *Individual Capacity Claims under Federal Law*

In the Complaint, Plaintiffs allege that Clark's actions in failing to conduct a post-mortem examination violated their civil rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution.   (Compl. ¶¶ 24-25).   As discussed below, Plaintiffs have failed to state a viable claim.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."   *West v. Atkins*, 487 U.S. 42, 48 (1988). In the instant case, however, Plaintiffs have failed to state any violation of a right secured by either the Constitution or the laws of the United States.   It is well established that Section 1983 provides no cause of action on behalf of a deceased person when the purported violation of his or her civil rights occurred after death.   *See Whitehurt v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979); *Guyton v. Phillips*, 606 F.2d 249, 250 (9th Cir. 1979); *Ford v. Moore*, 237 F.3d 156, 165 (2d. Cir 2001); *Estate of Conner by Conner v. Ambrose*, 990 F. Supp. 606, 618 (N.D. Ind. 1997).

### a.     Due Process

Even considering the allegations as advanced in the amended complaint, the Plaintiffs have failed to allege cognizable claims.   Plaintiffs assert that Clark deprived the estate "of her liberty by declaring the death of [their mother] a suicide and damaging [their mother's] good name, reputation, honor, and integrity, contrary to the Fourteenth Amendment and without due process of law when he failed to follow the statutory protocol for post-mortem examinations and autopsies to determine the appropriate cause of death."   (Compl. ¶ 24).

Contrary to Plaintiffs' allegations, they have no constitutional procedural due process rights or "liberty" interest in their mother's reputation, and thus have failed to state a valid claim

6

under Section 1983.  *See Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  (internal quotations  and citations omitted)); *see also Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993) ("Injury to reputation, standing alone, is not a liberty interest protected by the Fourteenth Amendment." (citing *Paul v. Davis*, 424 U.S. 693, 708-09 (1976))).  In addition, "[a]fter death, one is no longer a person within our constitutional and statutory framework, and has no rights of which [she] may be deprived."  *Love v. Bolinger*, 927 F. Supp. 1131, 1136 (S.D. Ind. 1996) (internal quotation marks omitted) (citing *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979)); *see also id.* ("reputation is neither a liberty nor a property interest within [the] meaning of [the] due process clause."  (citing *Smart v. Bd. of Trs. of Univ. of Ill.*, 34 F.3d 432, 434 (7th Cir. 1994)).

For these reasons, Plaintiffs have failed to state a due process claim related to Clark's alleged failure to conduct a proper post-mortem examination.  This claim will be dismissed.

### b.    Equal Protection

Plaintiffs also allege that Clark violated the Equal Protection Clause of the Fourteenth Amendment when he failed to perform an autopsy of the Decedent.  (Compl. ¶ 25).  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of law."  U.S. Const. amend. XIV § 1.  "To establish an equal protection claim under § 1983, Plaintiff must show that she is a member of a protected class and that she was intentionally and purposefully discriminated against because of her membership in that protected class."  *Jones v. Union Cty.*, 296 F.3d 417, 426 (6th Cir. 2002) (citing *Boger v. Wayne Cty.*, 950 F.2d 316, 325 (6th Cir. 1991)).

While Plaintiffs allege in Paragraphs 23 and 25 of the Complaint that Clark acted intentionally and under the color of state law, they failed to allege that they or Decedent was a member of a protected class. *See Foster v. Michigan*, 573 F. App'x 377, 396 (6th Cir. 2014) ("A prima facie case of discrimination requires a plaintiff to show that she was treated differently than others outside of the protected class." (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010))); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." (citing *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)) (internal quotation marks omitted)). Likewise, Plaintiffs have failed to allege that Clark discriminated against them or Decedent because of their membership in a protected class.

Absent any such allegations, they have failed to sufficiently allege an equal protection claim. Accordingly, the Court will dismiss Plaintiffs' equal protection claim.

### 3.      *Individual Capacity Claims under State Law*

Plaintiffs assert various state-law claims—including IIED—against Clark in his individual capacity. (Compl. ¶¶ 30-33). Additionally, Plaintiffs asserted a claim against Clark under KRS 446.070 relating to whether and to what extent he failed to conduct a post-mortem examination of Decedent in violation of KRS 72.405. (Compl. ¶¶ 27-29). KRS 446.070 is the codification of the common-law doctrine of negligence per se. *See McCarty v. Covol Fuels No. 2, LLC*, 978 F. Supp. 2d 799, 808 (W.D. Ky. 2013)

In examining these claims, the Plaintiffs' negligence *per se* claim gives the Court the most pause. As the Kentucky Supreme Court has noted with regard to these claims:

> In accord with traditional legal principles related to the common law concept of negligence per se, the statute applies when the alleged offender violates a statute

and the plaintiff comes within the class of persons intended to be protected by the statute.  This statute "permits a person injured by the violation of a statute to recover damages by reason of the violation."

*St. Luke Hosp. Corp. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011) (citations omitted).  *See also Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) ("The plaintiff must be within the class of persons the statute is intended to protect, *id.,* and the legislature must have intended the statute to prevent the type of occurrence that took place."  (citing *McCarty*, 978 F. Supp. 2d at 808-09)).

In *Thompson v. McLean County*, No. 2006-CA-000172-MR, 2008 WL 744928 (Ky. App. Mar. 21, 2008), the Kentucky Court of Appeals considered a claim asserted by a widow against a deputy coroner for failing to conduct an autopsy of her deceased husband.  *See id.* at *1.  In examining the requirements of KRS 72.405, the Court of Appeals noted that "[a] 'post-mortem examination' is defined by KRS 72.405(4) as an examination that '*may* include an autopsy.'  . . . KRS 72.025 does not specify how a postmortem examination is performed and a postmortem examination does not necessarily include an autopsy."  *Id.* at *3.  That court further stated that "while a post-mortem examination may have been required under [KRS 72.025], whether or not to order an autopsy was discretionary . . . ."  *Id.* (second alteration in original)).  If the defense of qualified official immunity applied under Kentucky law, the deputy coroner would have been "immune from suit for discretionary decisions made in good faith within the scope of his employment."  *Id.* at 3.  Because no discovery had taken place to determine whether the deputy coroner had acted in good faith, the Kentucky Court of Appeals concluded that it was premature to dismiss the plaintiff's claims.  *See id.* (citing *Yanero*, 65 S.W.3d at 523).

Based upon this Court's review of *Thompson*, that decision appears to presuppose that KRS 446.070 could provide a private cause of action by surviving family members against a

coroner for an alleged violation of KRS 72.405.  As noted above, the threshold issue is whether Plaintiffs are members of the class intended to be protected by KRS 72.405 and whether the injury suffered was an event which the statute was designed to prevent.  *See St. Luke Hosp. Corp.*, 354 S.W.3d at 534; *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. App. 1997).

In this case, it is not clear Plaintiffs fall within the class intended to be protected by KRS 72.405.  Post-mortem examinations are intended to determine the cause of death to assist in criminal prosecution of crimes against society.  *See Ely v. Thompson*, 10 Ky. 70, 74 (1820) (noting that criminal prosecutions are carried out by government "for any offence or crime against society.").  Likewise, it is questionable whether KRS 72.405 was intended to prevent the type of harm alleged in this case.  *See also McCarty*, 978 F. Supp. 2d at 808 ("[T]he mere violation of a statute does not necessarily create liability unless the statute was specifically intended to prevent the type of occurrence which has taken place.  Not all statutory violations result in liability for that violation.  The violation must be a substantial factor in causing the injury and the violation must be one intended to prevent the specific type of occurrence before liability can attach."  (alteration in original) (quoting *Lewis v. B & R Corp.*, 56 S.W.3d 432, 438 (Ky. App. 2001))).

Based upon the lack of clarity on these issues under state law, the Court concludes it would be inappropriate to retain jurisdiction over this matter.  "Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well."  *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003) (citing *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992)).  As this Court has noted:

> [A decision to remand] should demonstrate "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law."  When facing novel or complex state law, we "are to be cognizant that there may be 'nuances' of state law better left for resolution in the first instance by the state courts."

*Hasken v. City of Louisville*, No. 3:00CV-546-S, 2003 WL 25914386, at *2 (W.D. Ky. July 31, 2003) (citations omitted).  In deciding whether to decline supplemental jurisdiction, a court "should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefield v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (citing *Aschinger v. Columbus Showcare Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)).

In the present case the Court has dismissed Plaintiffs' federal claims; only state-law claims remain.  This case is at its outset and no discovery has been conducted, so there has been no expenditure of time or resources to develop the state-law claims.  Under these circumstances, the validity of remaining state-law claims are best left for the Kentucky courts to address.  Accordingly, the Court will decline to exercise supplement jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) and will remand this matter to Casey Circuit Court.  *See Morgan v. Morton*, No. 3:03CVP239R, 2003 WL 25547841 (W.D. Ky. Nov. 24, 2003) (remanding a removed case back to state court after dismissing all federal claims).

### B.    Plaintiffs' Motion to Amend/Correct the Complaint

After Clark moved to dismiss the claims in the Complaint, Plaintiffs moved for leave to file the tendered Amended Complaint.  (Pls.' Mot. to Amend, DN 13).  In the Amended Complaint, Plaintiffs propose to assert additional due process and equal protection claims.  (Pls.' Mot. to Amend Ex. ¶¶ 24-25, DN 13-2).  Additionally, Plaintiffs propose to allege that Clark's

statutory violations under Kentucky law were "negligent, reckless, grossly negligent, and/or willful and in bad faith . . . ." (Pls.' Mot. to Amend Ex. ¶ 29).

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (citation omitted). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Dep't*, 987 F.2d 376, 382-83 (6th Cir. 1993)). Applying that standard to Plaintiff's tendered Amended Complaint, the proposed amendments are futile.

As explained above, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, which would include any new claims that could be asserted in the Amended Complaint. The Court must determine, however, whether Plaintiffs have stated a viable federal claim in addition to the claims asserted in the Complaint.

In the Amended Complaint, Plaintiffs seek to assert a new substantive due process claim. (Pls.' Mot. to Amend Ex. ¶ 26). "To state a cognizable substantive due process claim, the plaintiff must allege "conduct intended to injure in some way unjustifiable by any government interest" and that is "conscience-shocking" in nature." *Mitchell v. McNeil*, 487 F.3d 374, 376 (6th Cir. 2007) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). As the Sixth Circuit has noted:

> Over the years, the courts have used several tropes to explain what it means to shock the conscience. Conduct shocks the conscience if it "violates the 'decencies of civilized conduct.'" Such conduct includes actions "so 'brutal' and 'offensive' that [they do] not comport with traditional ideas of fair play and decency." These are subjective standards, to be sure, but they make clear that the "shocks the conscience" standard is not a font of tort law, but is instead a way to conceptualize the sort of egregious behavior that rises to the level of a substantive due process violation.

12

*Range v. Douglas*, 763 F.3d 573, 589-90 (6th Cir. 2014) (citations omitted).   It has also

explained:

> Our cases recognize the difficulty of determining where conscience-shocking
> behavior resides on the continuum of actions.   The bookends present the easier
> cases.   Merely negligent tortious conduct is categorically beneath constitutional
> due process, but conduct on the other extreme end of the culpability spectrum,
> that which is "intended to injure" without any justifiable government interest,
> most clearly rises to the "conscience-shocking" level.   Conduct that is more akin
> to recklessness or gross recklessness, such as deliberate indifference, is a "matter
> for closer calls."   These middle states of culpability "may or may not be shocking
> depending on the context."   "Deliberate indifference that shocks in one
> environment may not be so patently egregious in another, and our concern with
> preserving the constitutional proportions of substantive due process demands an
> exact analysis of circumstances before any abuse of power is condemned as
> conscience shocking."

*Id.* at 590 (citations omitted).

In this case, Clark's conduct—even if true—does not rise to the level of violating

decencies of civilized conduct sufficiently to shock the conscience.   Clark's alleged conduct

(concluding Decedent committed suicide and not ordering an autopsy) is more akin to negligent

tortious conduct than any intent to injure Decedent or Plaintiffs.   This conclusion is consistent

with a sister court's holding that a coroner's alleged false determination of a cause of death did

not shock the conscience as required for a substantive due process claim.   *See Elfers v. Varnau*,

No. 1:14CV171, 2015 WL 1476746, at *7 (S.D. Ohio Mar. 31, 2015) (citation omitted).   *See*

*also Johnson v. Barker*, 799 F.2d 1396, 1400 (9th Cir. 1986) (holding that allegations of political

reasons for the pursuit of baseless criminal charges did not shock the conscience); *Cruz-Erazo v.*

*Rivera-Montañez*, 212 F.3d 617, 621-24 (1st Cir. 2000) (concluding that police officers'

wrongful conduct—including alleged perjured testimony in a court proceeding—did not arise to

the standard of shocking the conscience for a substantive due process claim); *Cusick v. City of*

*New Haven*, 145 F. App'x 701, 702-03 (2d Cir. 2005) (stating that "[a]ssuming arguendo that the

13

plaintiffs' evidence was sufficient to demonstrate that the defendants intended to harm them by withholding information from the North Haven police—a questionable supposition—this conduct still would not constitute the kind of heinous behavior recognized in the law as 'conscience-shocking.'").   Because Clark's alleged conduct is not sufficiently egregious, Plaintiffs' substantive due process claim fails.

For these reasons, Plaintiffs have failed to state a violation of substantive due process rights.[1]  The motion to amend will be denied.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendant's Motion for Summary Judgment is **GRANTED IN PART** on Plaintiffs' federal claims but is **DENIED IN PART** on Plaintiffs' state-law claims.

2.    Plaintiffs' Motion to Amend is **DENIED** as futile.

3.    This case is **REMANDED** to the Casey Circuit Court because this Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c), and this case shall be **STRICKEN** from the Court's active docket.

**Greg N. Stivers, Judge**
**United States District Court**
December 3, 2015

cc:    counsel of record

---

[1] As to the federal claims previously asserted in the Complaint that appear in the proposed Amended Complaint, this Court concludes that those claims are also futile for the same reasons outlined in dismissing the Complaint.

14